IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| QUINTESSENTIAL BIOSCIENCES, INC. ("Q SCIENCES"); and JAKE SPENCER,<br><br>Plaintiffs,<br><br>v.<br><br>JASON WHITE and TESSA WHITE; and COLE THURMAN, and JOHN DOES 1-25,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>Civil No. 2:20-cv-000456-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs have moved for a Temporary Restraining Order. The court has carefully reviewed Plaintiffs' Motion, their Complaint, and the affidavits and exhibits submitted with the Motion and other subsequent filings. It also heard argument on the Motion on July 21, 2020. For the following reasons, the Motion is **GRANTED IN PART.**

## FINDINGS OF FACT

1.    It is undisputed that Jason White was an Ambassador and/or Vice President for Sales for Quintessential Biosciences Inc. ("Q Sciences") in 2018, 2019, and early 2020.

2.    Plaintiffs have submitted substantial evidence that, as an Ambassador and/or Vice President for Sales, Defendant Jason White agreed to updated Policies and Procedures on January 21, 2020. *See* Dkt. No. 25-1 at 3 ¶¶ 6–10 (Spencer Decl.); *id*. at 16 (Spencer Decl., Ex. A).

3.    One of those Policies and Procedures is that, subject to certain exceptions, "[d]uring the term of the Ambassador relationship and for a period of six (6) months following

the end of an Ambassador's relationship with Q Sciences, an Ambassador must not engage in . . . the actual or attempted solicitation, recruitment or enrollment, either directly or indirectly, of other Q Sciences Ambassadors to participate in any other commission-based network marketing opportunity." Dkt. No. 11-1 at 25–26 (Padilla Decl., Ex. 3 ¶ 6.8.1).

4. In early March 2020, Q Sciences first suspended then terminated its relationship with Mr. White and Mr. White began to sell products for Tranont, a competitor of Q Sciences.

5. Plaintiffs have submitted substantial evidence that, beginning in early March, Mr. White solicited Q Sciences Ambassadors and/or Vice Presidents for Sales to join him in selling products for Tranont. *See* Dkt. No. 25-3 (Daugherty Decl.); Dkt. No. 25-4 (Adams Decl.). Plaintiffs have submitted evidence that this solicitation is ongoing. *See* Dkt. No. 25-1 at 9–12 ¶¶ 56 –84 (Spencer Decl.).

6. Plaintiffs have submitted evidence that Mr. White made negative comments about Q Sciences to other Q Sciences Ambassadors in the course of recruiting them to join him in selling for Tranont before Q Sciences suspended then terminated Mr. White's contract. *See* Dkt. No. 25-3 at 3 ¶ 4 (Daugherty Decl.); Dkt. No. 25-4 at 3 ¶ 4 (Adams Decl.).

## CONCLUSIONS OF LAW

1. To obtain a temporary restraining order, Plaintiffs must meet the same standard as for a preliminary injunction. *See Miche Bag, LLC v. Thirty One Gifts LLC*, No. 2:10-CV-781 TS, 2010 WL 3629686, at *1 (D. Utah Sept. 13, 2010). Plaintiffs "must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harms that the [temporary restraining order] may cause

the opposing party; and (4) the [temporary restraining order], if issued, will not adversely affect the public interest." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020).

2. Based on its review of the available evidence and briefing, the court concludes that Plaintiffs have established a substantial likelihood of success on their claim that Mr. White has breached—and is continuing to breach—his agreement not to solicit, recruit, or enroll "directly or indirectly, . . . other Q Sciences Ambassadors to participate in any other commission-based network marketing opportunity." Dkt. No. 11-1 at 25 (Padilla Decl., Ex. 3 ¶ 6.8.1).

3. To be sure, Mr. White argues that Q Sciences breached its agreements with him by paying his commission late in November 2019, failing to provide products on time for a period earlier that year, and transferring a portion of Mr. White's downline to another Ambassador without his written permission in December 2019.

4. But Mr. White subsequently agreed to the Policies and Procedures in January 2020. Thus, even if Q Science did breach any agreements it had with Mr. White in 2019, those breaches could not justify Mr. White in breaching the Policies and Procedures to which he agreed in 2020. *Cf. United States v. Under Seal,* 902 F.3d 412, 418 (4th Cir. 2018) ("There are few principles of contract law better established, or more uniformly acknowledged, than that a party to an executory bilateral contract, who keeps the same in existence after a known breach by the other party and accepts further performance from the party who has committed the breach, waives the breach.") (quotation marks and citation omitted).

5. Mr. White also argues that Q Sciences breached its agreement with him by terminating his contract without justification and by refusing to pay commissions, after his suspension and termination, that he had earned before his suspension and termination.

6. But as the court has found, Q Sciences has offered evidence that Mr. White solicited Q Sciences Ambassadors and/or Vice Presidents for Sales to join him in selling products for Tranont and made negative comments to these individuals about Q Sciences before it suspended and terminated its agreements with him. *See* Dkt. No. 25-3 (Daugherty Decl.); Dkt. No. 25-4 (Adams Decl.).

7. These actions appear to have violated Paragraph 6.8.1, discussed above, and may have violated other provisions of the 2020 Policies and Procedures, including Paragraph 6.4—which requires Ambassadors to "use their best efforts to promote the positive reputation of Q Sciences, its Products, its business opportunity, and its Ambassadors"—and Paragraph 6.5—which prohibits behavior "that is injurious to the image or reputation of Q Sciences." *See* Dkt. No. 11-1 at 24–25 (Padilla Decl., Ex. 3). Mr. White's actions thus appear to provide justification for Q Science's suspension and termination of its agreements with him.

8. In addition, the 2020 Policies and Procedures expressly authorize "the complete cancellation of an Ambassador Agreement and revocation of the Ambassador's rights by Q Sciences, including the right to receive any further compensation, whether accruing before or after the termination date, due to violation of one or more of these Policies . . . ." Dkt. No. 11-1 at 44 (Padilla Decl., Ex. 3 ¶ 11.2(5); *see also id*. at 43 ¶ 11.2(3) ("Compensation that would have been earned by or paid to the Ambassador during the suspension period is forfeited."); *id*. at 42–

43 ¶ 11.1 (authorizing the "withholding or forfeiture of an Ambassador's unpaid earnings and incentives" as a disciplinary measure).

9. For all of these reasons, the court concludes that Plaintiffs have shown a substantial likelihood of success on its claim that Mr. White has breached and is continuing to breach the 2020 Policies and Procedures to which he agreed despite Defendants' claim of prior material breach.[1]

10. Based on the available evidence and briefing, the court concludes that Q Sciences faces a substantial likelihood of irreparable harm absent a temporary restraining order.

11. More specifically, the court finds that Plaintiffs have made a substantial showing that a temporary restraining order enjoining Mr. White from continuing to solicit Q Sciences employees is necessary to prevent the loss of goodwill and competitive market position, as well as other damages that would be difficult to calculate.

12. As the Tenth Circuit has recognized, findings of irreparable harm may be "based on such factors as the difficulty in calculating damages, the loss of a unique product, and

---

[1] Although the court has not located any Utah cases specifically addressing the issue, it believes the Utah courts would likely follow the general rule that a party asserting a prior material breach as a defense to a breach of contract claim bears the burden of establishing the prior material breach. *See, e.g.*, *Maverick Benefit Advisors, LLC v. Bostrom,* 382 P.3d 753, 758 (Wyo. 2016) (collecting cases).

existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004).

13. Based on the available evidence and briefing, the court concludes that the threatened injury to Plaintiffs outweighs any injury that Defendants would suffer from the limited relief granted by this order.

14. Based on the available evidence and briefing, the court concludes that the relief granted by this order is not adverse to the public interest. To the contrary, the court concludes that the public interest weighs in favor of enforcing the agreement between Mr. White and Q Sciences.

15. The court rejects Plaintiffs' contention that no bond should be required, but also rejects Defendants' contention that the amount of the bond should be measured by the full amount of the Whites' earnings at Q Sciences prior to their termination. The court concludes that a bond of $2500 will suffice to make Mr. White if it is subsequently determined that this temporary restraining order should not have issued.

## TEMPORARY RESTRAINING ORDER

1. For the foregoing reasons, Plaintiffs' Motion is **GRANTED IN PART**.

2. Defendant Jason White is hereby enjoined from the actual or attempted solicitation, recruitment, or enrollment, either directly or indirectly, of any Q Science Ambassadors, other than those who he personally sponsored as Q Science Ambassadors, to participate in any other commission-based network marketing opportunity.

3. Defendants shall promptly post a bond of $2,500 with the court. If Defendants fail to post a bond in this amount by July 28, 2020 at 5:00 PM, this order will expire at that time. If

the duration of this order is extended by consent or for good cause, *see* Fed. R. Civ. P. 65(b)(2), the amount of the required bond will be increased by $1250 for each additional week the order remains in effect.

    4.    This order is issued at 12:30 PM MDT on July 23, 2020, and will expire at 12:30 PM MDT on August 5, 2020.

    **IT IS SO ORDERED**

_____<br>
Howard C. Nielson, Jr.<br>
United States District Judge